KATE JOHNSON, Respondent, v. PARK CITY, a
Municipal Corporation, Appellant.

No. 1515.   (76 Pac. 216.)

1. Jurors: Challenge for Cause: Opinions.
   That a juror has an erroneous idea of the law governing a
   case does not make him subject to challenge for cause,
   under Revised Statutes 1898, section 3144, for a state of
   mind that will prevent his acting without prejudice to the
   rights of a party; no disposition being shown by him to be
   governed by his own ideas, rather than by the declarations
   of the court as to what the law is.

2. Same: Defective Sidewalk: Personal Injury.
   Challenge is properly sustained to a juror in an action for in-
   jury from a defective sidewalk; he having admitted he had
   an opinion as to the condition of the walk, acquired by his
   observations and general knowledge of the walk.

3. Same: Evidence.
   In an action for personal injuries to K. the exclusion of testi-
   mony referring to an accident to M. at a different time
   and place is not error.

4. Same: Notice to City: Question for Jury.
   The question of notice to a city of a defect in a sidewalk is
   for the jury; there being evidence that the walk was old,
   and the lumber in it old and decayed; that a stringer to
   which the planks were nailed was rotten; that some of the
   boards were loose from four to ten days before the acci-
   dent; that city officials, several times, just before the acci-
   dent, nailed down loose boards; and that some time before
   the accident the city reconstructed portions of the walk
   by putting in new planks.[1]

(Decided April 6, 1904.)

Appeal from the Third District Court, Summit County,
Hon. C. W. Morse, Judge.

---

[1] Scoville v. Salt Lake City, 11 Utah 60, 39 Pac. 481.

Action to recover damages alleged to have been occasioned by the negligence of the defendant city. From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED.

*Messrs. Snyder & Wight* for appellant.

*Messrs. Powers, Straup & Lippman* for respondent.

STATEMENT OF FACTS.

This is an action for damages for personal injuries alleged to have been sustained by plaintiff by reason of falling upon the sidewalk of Park City. It is alleged in the complaint that the city negligently allowed the sidewalk in question to become dangerous and unsafe by negligently and carelessly suffering and permitting the boards and structures of the sidewalk to be loose, decayed, defective, and insufficiently, insecurely and improperly fastened; that on the 16th day of May, 1900, while the plaintiff was walking and traveling along and upon said sidewalk, and not knowing of its dangerous and defective condition, and while using ordinary care for her own safety, she was, because of said defective and dangerous condition of said sidewalk, thrown with great force and violence upon said walk and upon the ground, whereby the ankle of her limb was broken, and she sustained thereby permanent and lasting injuries, and suffered great pain to her damage in the sum of $10,000. The defendant answered, denying the material allegations of the complaint relied upon for a recovery, and alleged contributory negligence on the part of plaintiff.

The record discloses about the following state of facts: The accident for which plaintiff claims damages occurred May 16, 1900, on the sidewalk of a street in Park City known as "Park Avenue." The walk

in question was about five feet in width, and made of lumber. On the day of the accident plaintiff, in company with two other ladies, was walking along the sidewalk, returning from a social call made by them. One of the ladies was a little in advance of the others, wheeling a baby carriage, and, as the carriage passed over a loose board in the walk, the board tilted and flew up, and tripped plaintiff, and she fell upon the sidewalk; the fall breaking and fracturing her ankle, which injuries proved to be permanent. At the time of the accident, plaintiff and those with her were walking along slowly and in the usual and ordinary manner. She had no notice or warning that the board was loose and the walk out of repair. Park Avenue is quite thickly settled, and the walk referred to extensively used. This street is the main thoroughfare from the business part of the town to the railroad depot, and the people of Park City when walking to and from the depot, usually pass along and over this sidewalk. Some of plaintiff's witnesses testified that the boards in this walk were old, split, and decayed. One witness testified that one of the stringers on which the boards were supposed to be fastened was rotten. Several of the witnesses testified that they had seen loose boards in the walk at and near the place of the accident from four to ten days before it occurred. The evidence introduced by defendant, while it showed the walk to be an old one, tended also to show that at the time of the accident, with the exception of the one loose board, it was in good condition, and that the lumber of which it was composed was not rotten or decayed. Several of the city officials, who were called as witnesses testified that this walk was frequently inspected by one of the city officers, and, when a board was discovered to be loose, it was immediately nailed down and tightened. One of the witnesses testified that, on the Sunday next preceding the day of the accident, he found three loose boards in the walk in the vicinity of where plaintiff was injured, and nailed them down. James Rasband, a witness for the defendant, testified that he

lived on this same street one block below where the accident occurred, and passed over the walk from four to six times a day, and had seen loose boards in the walk, but could not say just when; that they would not remain loose long before they were tightened. Did not see any on the day of the accident, but "had seen loose boards in the vicinity of the accident, . . . and quite a piece below there. . . . Planks wouldn't remain loose long, but were nailed down shortly after." M. F. Harris was called as a juror, and examined as to his qualifications by counsel for appellant, and, in the course of the examination, stated that he had no prejudice against municipal corporations; that he would not require a different measure or quantity of proof where a city is a party than he would in a case between individuals; that he understood the city is only required to exercise ordinary care, and that it is not an insurer; that he was aware of the principle of law, and would be guided by it, that a person is bound to use ordinary care for his own safety under all circumstances; and that he would be guided by the law and the evidence. Then followed an extended examination of the juror, and numerous questions were asked him which involved principles of law as well as questions of fact, which it is not necessary to produce; and, after a brief statement respecting the law of negligence, the following question was propounded: "Now, Mr. Harris, bearing that in mind as the law, would you still grant a verdict from the fact that a board was found loose from which an injury resulted, regardless of the question how long it had been loose? A. I think I would." Defendant then challenged the juror for cause. On examination by plaintiff, the juror answered that he "would accept as the law in the case whatever the court charged to be the law;" and again that, "so far as the law is concerned, in reference to all questions in the case—the question of notice to the city as well as other questions—he would follow the instructions of the court." The challenge was denied, to which ruling the defendant excepted. De-

fendant then challenged the juror peremptorily, and he was excused. E. E. Milan was examined as to his qualifications to sit as a juror in the case, and he answered that he had resided in Park City for 13 years, and was familiar with the sidewalk in question; that at the time of the accident the walk was passable, that he walked over it, and it didn't bother him; that he never noticed it in particular. "Q. Now, have you any opinion as to whether the sidewalk was in a reasonably good condition or not? A. I would imagine it was. . . . That would be my opinion." And again he says: "I was traveling over it every day. . . . I know it didn't bother me to walk up and down. That is about all I would say about it. Never noticed it being in good or bad shape. Q. You went over there every day for how long? A. Pretty much every day of my life, I guess, for the past ten years." Plaintiff challenged this juror for cause. The challenge was sustained, and the defendant exccepted. The issues were tried by a jury, who returned a verdict for the plaintiff, and assessed her damages at $1,500. Defendant appeals.

McCARTY, J., after stating the facts, delivered the opinion of the court.

Appellant's first contention is that the court erred in overruling the challenge made to Juror Harris. The challenge was based upon section 3144, Rev. St. 1898, which, so far as material here, provides that a challenge for cause may be taken on the ground "that a state of mind exists on the part of the juror with reference to the case or to either party which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging." It does not appear that the juror entertained any bias for or against either party, and his answers plainly indicate that he had no opinion whatever respecting the merits of the case. In fact, it is not claimed that he was disqualified from sitting in the case because of any preconceived opinion he had formed respecting any feature of it.

Counsel for appellant, in their brief, say: "Appellant does not contend for an instant that Mr. Harris would not have tried to be fair." But they contend that his idea of the law of negligence, as indicated by his answer to the hypothetical question propounded to him as to what he might do under a given state of facts, disqualified him from serving as a juror in the case. The fact that a juror may entertain an erroneous idea or have a false impression respecting the principles of law that govern in a particular case does not necessarily disqualify him from sitting in the case, unless he has shown a disposition to be governed in the case by his own ideas and notions as to what the law is instead of accepting the law as declared by the court; otherwise but few men would be found qualified to serve as jurors in any kind of case. The case of Lombardi v. Street Cable R. R. Co. (Cal.) 57, Pac. 67, cited and relied upon by appellant, is not in point. In that case the juror answered that he was well acquainted with the plaintiff, and his family, personally and in a business way, and repeatedly stated during his examination that, if there should be any doubt as to the plaintiff's right to recover, he would give him the benefit of the doubt, and, in case of a difference of opinion among the jurors as to the amount of the verdict, "he would go to the biggest verdict." He also stated that he felt his intimacy with the plaintiff would interfere with a proper discharge of his duties as a juror. It will therefore be observed in that case it was clearly shown that a state of mind existed on the part of the juror that would in all probability have prevented him from acting with impartiality in the case, whereas in this case no such state of mind is shown to have existed on the part of Juror Harris; but, on the contrary, the record affirmatively shows that he had no bias or prejudice for or against either party, and he repeatedly stated that he would accept and be governed by the law as declared by the court. Nor did he at any time during the entire examination show any desire or inclination to follow or substitute his own ideas

of the law for the law as announced by the court. There-
fore the court did not err in overruling the challenge.

Neither did the court err in sustaining the challenge
to Juror Malin. The record shows that he was very fa-
miliar with the walk in question, having passed over it
daily for 13 years. The condition of the walk was
one of the material issues in the case, and he hav-
ing admitted that he had an opinion on this point,
which the record shows he acquired from his observa-
tions and general knowledge of the walk, the court did
not err in excluding him from the jury.

Defendant moved for a continuance of the case be-
cause of the absence of one of its witnesses. The mo-
tion was based upon an affidavit of counsel for defend-
ant, and in the affidavit the facts were set forth
which defendant expected to prove by the absent
witness. These facts, which were copied from an
affidavit of Taylor Bales, the absent witness, and set up
in the affidavit for a continuance, are as follows: "I
[Taylor Bales] was in Park City, Summit county, Utah,
during the year 1901, and I think during the month of
August or September. I saw Mrs. Mary Johnson com-
ing up the main street of Park City in company with two
other women, and below the electric light plant in the
First Ward of Park City. I saw her step off into the
ditch and fall. The two women who were with her
picked her up. I also learned that the fall broke her
leg. I do not know the names of the two women who
were with her. Mrs. Johnson was on the outside, next
to the ditch. The woman in the center pushed a baby
carriage." Plaintiff, in order to avoid a continuance,
admitted that the witness, if present, would testify as set
forth in the affidavit for a continuance; reserving the
right to object to such testimony offered on the ground
of its incompetency, immateriality, and irrelevancy.
When the defendant offered the foregoing testimony, it
was objected to by plaintiff on the ground mentioned,
which objection was sustained by the court. This rul-
ing appellant assigns as error. By an examination of

the record, it will be seen that the testimony thus excluded by the court referred to an accident that happened on Main street of Park City, which is a separate and distinct street from Park Avenue, where it is alleged in the complaint, and the evidence both for plaintiff and defendant shows, the accident under consideration occurred. It also refers to a Mrs. Mary Johnson as the party who was injured, and not to Kate Johnson, the plaintiff herein, and to an accident that happened more than a year subsequent to the one involved in this action. The variance between this evidence and the issues made by the pleadings is so great that it was not admissible for any purpose.

Complaint is also made because the court refused to peremptorily instruct the jury to return a verdict for the defendant "because no notice to defendant of the defect in the sidewalk was shown prior to the accident." There is evidence in the record that the sidewalk in question was old, and that the lumber of which it was made was worn and decayed; that one of the stringers to which the planks on the walk were nailed was rotten; that some of the boards were loose from four to ten days prior to the accident, and that the officers of the city on several occasions just prior to the accident, nailed down boards in the walk which were found to be loose; and that some time before the accident, but just how long does not appear, appellant reconstructed portions of the sidewalk, to the extent of putting in new planks. Under these circumstances, the question of notice to the appellant was one of fact for the jury to determine. Scoville v. Salt Lake City, 11 Utah 60, 39 Pac. 481. There is much evidence in the record which tends to show that appellant used due diligence to keep the walk in good repair, and that on the day of the accident, with the exception of the one loose board which caused the injury complained of, the walk was in good condition. There being a substantial conflict in the evidence on this point, it was a question for the jury.

We find no reversible error in the record. The judgment is therefore affirmed, with costs.

BASKIN, C. J., and BARTCH, J., concur.